J-S30014-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEONARDO J. MOJICA-CARRION | : | |
| | : | |
| Appellant | : | No. 803 MDA 2021 |

Appeal from the PCRA Order Entered June 9, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0005210-2013

BEFORE:   BENDER, P.J.E., McCAFFERY, J., and COLINS, J.*

MEMORANDUM BY BENDER, P.J.E.:                **FILED:  NOVEMBER 16, 2021**

Appellant, Leonardo J. Mojica-Carrion, appeals *pro se* from the post-conviction court's June 9, 2021 order denying, as untimely, his second petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm.

On August 21, 2014, Appellant was convicted of single counts of first-degree murder, aggravated assault, robbery, and carrying a firearm without a license, as well as three counts of conspiracy.  The facts underlying his convictions were previously summarized by this Court, as follows:

> Estiben Manso ("Manso") testified that he ran into [Appellant] at a corner store, at approximately 8:15 or 8:20 P.M. on September 20, 2013.  [Appellant] told Manso that he had a gun that he had not used yet, and that he wanted to use to get some money to pay his rent.  Manso agreed to help [Appellant], and met [Appellant] at [Appellant's] house at approximately 9:00 P.M.

---

* Retired Senior Judge assigned to the Superior Court.

> [Appellant] and Manso walked toward a bar called La Rienda. Then, according to Manso, they saw a man exit the bar, who was talking on a phone, and decided to follow him. Eventually, [Appellant] approached the victim, and after getting the victim's attention, shot the victim when he attempted to run away.

*Commonwealth v. Mojica-Carrion*, No. 1197 MDA 2016, unpublished memorandum at 1-2 (Pa. Super. filed June 16, 2017) (quoting Trial Court Opinion, 11/3/16, at 3-4) (some brackets omitted).

For Appellant's convictions, he was sentenced to an aggregate term of life imprisonment without parole, plus a consecutive 14 to 47 years' incarceration. His judgment of sentence was affirmed by this Court on June 16, 2017. *See id.* Our Supreme Court denied his petition for allowance of appeal on November 29, 2017. *See Commonwealth v. Mojica-Carrion*, 175 A.3d 221 (Pa. 2017). Appellant did not seek review by the United States Supreme Court and, thus, his judgment of sentence became final on February 27, 2018.

Appellant filed his first, *pro se* PCRA petition on April 4, 2018. That petition was ultimately denied on December 3, 2019, and this Court affirmed on appeal. *See Commonwealth v. Mojica-Carrion*, 245 A.3d 1073 (Pa. Super. 2020).

Appellant then filed the instant, *pro se* PCRA petition on January 4, 2021. Therein, he asserted that the Commonwealth failed to disclose to him, before or during his trial, that it had made a leniency deal with its key witness, Estiben Manso, in exchange for Manso's testimony against Appellant. Appellant also claimed that the government had interfered with his discovery

and raising of this new evidence by denying his requests for the record in Manso's case.

On April 20, 2021, the PCRA court filed a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition without a hearing, as well as an opinion explaining its reasons for that decision. On June 9, 2021, the court issued an order dismissing his petition on the basis that it was untimely. Appellant filed a timely, *pro se* notice of appeal. The docket does not indicate that the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, or that the court filed a Rule 1925(a) opinion. However, the basis for the court's dismissal of Appellant's petition is clear from its April 20, 2021 Rule 907 notice.

Herein, Appellant states three issues for our review:

A. Did the PCRA [c]ourt err and commit reversible error when it failed to recognize a timely[-]presented petition to the [c]ourt, that was pertinent to the [d]ue [p]rocess of [l]aw with regards to final disposition?

B. Did the PCRA [c]ourt err and commit reversible error when it dismissed [A]ppellant's petition without the benefit of a properly conducted evidentiary hearing to determine the credibility of the evidence presented that led to the filing of said petition?

C. Did the PCRA [c]ourt err in its determination that Estiben [] Manso['s g]uilty [p]lea and [s]entencing [t]ranscript does not establish the existence of an agreement wit[h] the Commonwealth?

Appellant's Brief at 3.

Preliminarily, we note that our standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA

court is supported by the evidence of record and is free of legal error. **Commonwealth v. Ragan**, 923 A.2d 1169, 1170 (Pa. 2007). We must begin by addressing the timeliness of Appellant's petition, because the PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. **See Commonwealth v. Bennett**, 930 A.2d 1264, 1267 (Pa. 2007). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

> **(b) Time for filing petition.--**
>
> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
>> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>>
>> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>>
>> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Additionally, any petition attempting to invoke one of these exceptions must "be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Here, as stated *supra*, Appellant's judgment of sentence became final in February of 2018, making his present petition filed in January of 2021 patently untimely. Consequently, for this Court to have jurisdiction to review the merits thereof, Appellant must prove that he meets one of the exceptions to the timeliness requirements set forth in 42 Pa.C.S. § 9545(b).

Instantly, Appellant argues that he meets the governmental interference and newly-discovered-facts exceptions. According to Appellant, on April 22, 2020, he obtained Estiben Manso's case records, which revealed that the Commonwealth made a leniency agreement with Manso prior to his testifying at Appellant's trial. As proof of this pre-trial deal, Appellant points to the fact that five charges against Manso (including second-degree murder) were dismissed in exchange for his pleading guilty to only two charges. Appellant also highlights comments by the court at Manso's plea/sentencing hearing (discussed, *infra*) that indicate Manso received leniency in exchange for his cooperation in Appellant's prosecution. Appellant avers that these facts demonstrate that Manso had a leniency deal with the Commonwealth before Appellant's trial that was not disclosed to Appellant. He also claims that the government interfered in his discovering this deal because the trial court repeatedly denied his requests for Manso's case records until December of 2019.

In response, the Commonwealth observes that both Appellant's governmental-interference and newly-discovered-fact claims stem "from the single premise that … there was an agreement[,] prior to [Appellant's] trial[,] between the Commonwealth and … Manso to offer Manso leniency in exchange for his testimony." Commonwealth's Brief at 11. According to the Commonwealth, there was **no** such pre-trial deal between the prosecution and Manso, and it argues that the records cited by Appellant do not show otherwise. After careful review, we agree with the Commonwealth.

Initially, as the PCRA court observed, at Appellant's trial, his defense counsel "was successful in having [] Manso admit that he was testifying on behalf of the Commonwealth **in the hopes** that he would get a deal in his own case." PCRA Court Opinion (PCO), 4/20/21, at 10 (emphasis added). For instance, during Manso's cross-examination, counsel elicited the following testimony:

> [Defense Counsel:] Okay. And so you're testifying here today and helping the very people who are prosecuting you; is that correct?
>
> [Manso:] Yes.
>
> [Defense Counsel:] And I can only imagine that's because you are hoping that they take it easy on you in your own case; is that correct?
>
> [Manso:] Yes.
>
> [Defense Counsel:] In other words, you hope to get a deal as a result of your testimony, correct?
>
> [Manso:] Yes.

[Defense Counsel:] You don't want to be prosecuted in adult court, do you?[1]

[Manso:] No.

[Defense Counsel:] You want to be prosecuted in juvenile court, right?

[Manso:] Yes.

[Defense Counsel:] I'm sure your lawyer[] [has] told you the difference between … those two [courts], correct?

[Manso:] Yes.

*Id.* (quoting N.T. Trial, 8/17/14, at 408). Thus, the jury was informed that Manso was testifying in the hopes of receiving leniency from the Commonwealth.

Ultimately, Manso did not get the benefit he had hoped to receive from testifying, *i.e.*, his case being transferred to juvenile court. However, he did get leniency in exchange for his testimony. For instance, on January 6, 2015 – five months **after** Manso testified at Appellant's trial - he pled guilty to robbery and conspiracy to commit robbery, in exchange for a standard range, aggregate sentence of 5 to 20 years' incarceration and the dismissal of his remaining charges, including second-degree murder. **See** Appellant's PCRA Petition, 1/4/21, at Exhibit P (N.T. Manso's Guilty Plea/Sentencing, 1/6/15, at 4, 8). In agreeing to accept Manso's negotiated guilty plea, the court stated that it took into consideration Manso's "very smart" decision to cooperate with

_____

[1] Manso was a juvenile at the time he committed his crimes. **See** PCO at 11 n.17.

the Commonwealth and testify at Appellant's trial. ***Id.*** (N.T. Manso's Guilty Plea/Sentencing at 7, 9, 10).

Notwithstanding that Manso got leniency in exchange for his testimony, Appellant's claim that he had a deal with the Commonwealth before he testified against Appellant is not supported by the record. Rather, Manso's case record demonstrates only that his cooperation was considered by the Commonwealth in negotiating his plea agreement ***after*** Appellant's trial, and by the court in accepting the same. Contrary to Appellant's belief, nothing in Manso's case record indicates that the Commonwealth promised Manso anything ***before*** he testified against Appellant.[2] Instead, as the jury was informed, Manso only testified in the hopes that his cooperation would benefit him in his own prosecution. The fact that Manso did receive some benefit for testifying against Appellant does not demonstrate that the Commonwealth made a deal with Manso before he testified, and withheld that deal from

_____

[2] Appellant insists that a "Disposition of Charges" form filed in Manso's case is proof that Manso struck a deal with the Commonwealth ***before*** Appellant's trial. That document states that five counts pending against Manso were dismissed, and is hand-dated January 6, **2014**, which was over six months before Appellant's trial began. However, the handwritten date on the "Disposition of Charges" form seems to be a simple mistake. First, the form was time-stamped by the Clerk of Courts on January 6, **2015**. Moreover, it states: "The defendant[,] **having been sentenced** on Counts 6 [and] 7, … and[] on motion of the District Attorney, Counts 1-5[] are dismissed." Appellant's PCRA Petition at Exhibit G (emphasis added). Manso pled guilty and was sentenced on January 6, **2015**. The docket also indicates that Manso's charges were dismissed on January 6, **2015**. This record demonstrates that the 2014 date handwritten on the "Disposition of Charges" form was simply an error, and that the form was actually completed in 2015.

Appellant. Thus, we agree with the Commonwealth that Appellant has not pled any "new fact" that could satisfy the timeliness exception of section 9545(b)(1)(ii). He also cannot demonstrate that the government interfered with his raising a claim based on a leniency agreement with Manso, when no such deal existed. Therefore, the PCRA court did not err in dismissing his untimely petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2021