J-S25011-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                               :          PENNSYLVANIA
                               :
            v.                 :
                               :
                               :
DAMIAN PHILLIPS                :
                               :
            Appellant          :   No. 2237 EDA 2020

Appeal from the PCRA Order Entered November 18, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-1100411-1994

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    Filed: October 7, 2021

Appellant, Damian Phillips, appeals from the post-conviction court's

November 18, 2020 order denying, as untimely, his petition filed under the

Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  After careful

review, we affirm.

The PCRA court set forth the pertinent facts and procedural history of

this case, as follows:

> On February 28, 1994, Appellant and a second man, Antonio
> Hudson ("Hudson"), committed an armed robbery at the San Jan
> Chinese Restaurant.  Appellant shot and killed Xiaohuang Wang,
> Kim Wing Lam, and Xia Gan Lin during the robbery.  On July 26,
> 1995, Appellant was convicted of three counts of first-degree
> murder and robbery, as well as one count of criminal conspiracy
> and one count of possessing an instrument of crime.  On July 27,
> 1995, Appellant was sentenced to three consecutive terms of life
> imprisonment for the murder convictions[,] and a consecutive
> term of thirty-seven and one half to seventy-five years'

---

[*] Retired Senior Judge assigned to the Superior Court.

imprisonment for the remaining offenses. The Superior Court affirmed the judgment of sentence on May 30, 1996, and on November 1, 1996, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal.

On March 8, 2019, Appellant filed the instant PCRA petition, his seventh…, seeking an evidentiary hearing and vacation of his convictions pursuant to 42 Pa.C.S. § 9543(a)(2)(i) and 42 Pa.C.S. § 9543(a)(2)(iv). Specifically, Appellant alleged that the Commonwealth violated his constitutional right to due process by failing to disclose information concerning unconstitutional interrogation patterns and practices used by the Philadelphia Homicide Unit, particularly by Detective Thomas Augustine [("Augustine")]. According to the Appellant, this newly-discovered evidence undercuts the confessions of accomplice Hudson and witness Audrey Taylor ("Taylor")[,] as well as the ballistics evidence used against him. On May 20, 2019, Teri B. Himebaugh, Esquire, entered her appearance on Appellant's PCRA [petition]. This matter was assigned to the Honorable Tracy Brandeis-Roman on December 20, 2019. That same day, the Commonwealth filed its Motion to Dismiss. Appellant, through Attorney Himebaugh, filed a Response to the Commonwealth's Motion to Dismiss on January 12, 2020. Appellant filed supplemental PCRA Petitions on March 13, 2020, and May 11, 2020.

Before this court could … review Appellant's March 13, 2020[] filings, the pandemic known as COVID[-]19 caused a shutdown of the court system in Pennsylvania. As a result, this court was unable to access any files or review Appellant's supplemental petitions for approximately two months' until we returned on May 18, 2020. On May 22, 2020, Appellant filed another response to the Commonwealth's December 20, 2019[] Motion to Dismiss. On June 2, 2020, Appellant filed another supplemental PCRA petition. On June 23, 2020, the Commonwealth filed a supplemental response to Appellant's PCRA petition. On July 29, 2020, Appellant filed another supplemental PCRA petition, to which the Commonwealth filed a response on August 11, 2020.

On October 2, 2020, after reviewing all relevant filings, this court filed a notice of dismissal under [Pa.R.Crim.P.] 907. On October 20, 2020, Appellant filed a *pro se* response to the notice of dismissal. On November 18, 2020, this court filed an order dismissing Appellant's PCRA Petition. On November 25, 2020, Appellant filed a notice of appeal to the Pennsylvania Superior

Court. On January 21, 2021, this court issued an order pursuant to Pa.R.A.P. 1925(b). On January 31, 2021, Appellant filed a statement of matters complained [of] on appeal [pursuant to Pa.R.A.P. 1925(b)].

PCRA Court Opinion (PCO), 2/23/21, at 1-3 (footnotes omitted). The PCRA court filed its Rule 1925(a) opinion on February 23, 2021.

Herein, Appellant states one issue for our review: "Did the PCRA [c]ourt mischaracterize what the 'new' evidence at issue is and in doing so, incorrectly analyze its[] timeliness and merit?" Appellant's Brief at 3.[1]

Preliminarily, we note that this Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. ***Commonwealth v. Ragan***, 923 A.2d 1169, 1170 (Pa. 2007). We must begin by addressing the timeliness of Appellant's petition, because the PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. ***See Commonwealth v. Bennett***, 930 A.2d 1264, 1267 (Pa. 2007). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

---

[1] We note that Appellant's counsel set forth this single issue in the Statement of the Questions Involved section of Appellant's brief and provided only two sentences in her Summary of the Argument section. ***See*** Appellant's Brief at 7. However, counsel divided the Argument section of Appellant's brief into multiple, distinct, and lengthy claims and sub-claims, none of which are set forth in, nor fairly suggested by, the Statement of the Questions. We chastise counsel for her deficient briefing in this regard.

**(b) Time for filing petition.--**

> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
> > (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
> >
> > (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
> >
> > (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Additionally, any petition attempting to invoke one of these exceptions must "be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Here, as stated *supra*, our Supreme Court denied Appellant's petition for allowance of appeal from our decision affirming his judgment of sentence on November 1, 1996. Appellant did not seek further review and, thus, his judgment of sentence became final ninety days later, on January 30, 1997, upon expiration of the time to file a petition for writ of *certiorari* with the United States Supreme Court. **See** 42 Pa.C.S. § 9545(b)(3); U.S.Sup.Ct.R. 13. Consequently, Appellant's present petition, filed in 2019, is facially untimely and, for this Court to have jurisdiction to review the merits thereof,

- 4 -

he must prove that he meets one of the exceptions to the timeliness requirements set forth in 42 Pa.C.S. § 9545(b).

Instantly, Appellant argues that he meets the after-discovered evidence exception of section 9545(b)(1)(ii), as well as the governmental interference exception of section 9545(b)(1)(i). According to Appellant, the 'new fact' he has discovered is that homicide detectives in Philadelphia utilized a "pattern and practice" of "coercive interrogation techniques in order to fabricate false evidence to implicate a pre-ordained suspect." Appellant's Brief at 8. Appellant claims that the unconstitutional interrogation practices utilized by detectives included targeting "weak" individuals; isolating witnesses and suspects for lengthy periods of time; using threats, as well as verbal and physical abuse; and manipulating, fabricating, and/or destroying evidence. *See id.* at 9-10.

Appellant explains that "this unconstitutional interrogation pattern and practice was identified for the very first time in the June 7, 2018[] ruling by the Honorable Teresa Sarmina in *Commonwealth v. Dwayne Thorpe*[] (CP-51-CR-0011433-2008." *Id.* at 8-9. Appellant recognizes that the *Thorpe* decision specifically relates to the actions of former Philadelphia homicide detective James Pitts, who was not involved in Appellant's case. *Id.* at 9 n.1. Nevertheless, Appellant "avers that the unconstitutional pattern and practice was at all times material [and] widespread throughout the Homicide Unit and involved multiple other detectives, including but not limited to … Augustine and [his partner,] Tomiano." *Id.*

Appellant argues that the **Thorpe** case, and the other, unrelated criminal cases on which he relies,[2] establish that Philadelphia homicide detectives, including Augustine, "regularly participated in the newly identified pattern and practice" of misconduct. **Id.** at 11. Regarding misconduct in his case, Appellant claims that Augustine planted evidence to bolster the credibility of Hudson's confession, which implicated Appellant. Namely, Hudson claimed that a total of four shots had been fired by Appellant during the incident. Appellant maintains that, "to make the physical evidence fit with Hudson's confession[,]" Augustine planted a fourth fired cartridge casing (FCC) at the scene of the murders. **Id.** at 17. Appellant points out that two witnesses who lived above the restaurant claimed to have heard only three shots, there were three victims who were each shot only once, and a fourth bullet was never recovered. **Id.** at 17-18. Additionally, three of the FCCs found at the scene were determined to have been fired by the same gun, while the fourth FCC "had insufficient markings and could not be determined to have come from the same firearm." **Id.** at 18. According to Appellant, this evidence supports his theory that Augustine planted the fourth FCC.

Appellant also provided to the PCRA court an affidavit from witness Audrey Taylor, who claimed that unnamed detectives coerced her into stating that her gun, the murder weapon, was missing four bullets after the shooting.

---

[2] The PCRA court lists the cases, in addition to **Thorpe**, on which Appellant relies to argue that there existed a 'pattern and practice' of detectives' misconduct in Philadelphia. **See** PCO at 10.

Appellant further claims that detectives coerced him into falsely confessing by threatening him and handcuffing him to a chair during his interrogation. ***Id.*** at 27. Appellant insists that his coerced confession, and Taylor's affidavit, support that Augustine and other detectives in this case were manipulating the evidence and using impermissible interrogation techniques, consistent with their 'pattern and practice' of misconduct in other cases. According to Appellant, his discovery of this previously unknown, widespread misconduct by Philadelphia detectives constitutes a new fact that meets section 9545(b)(1)(ii). He also argues that the Commonwealth had an obligation to disclose this misconduct, and its failure to do so amounts to governmental interference that satisfies section 9545(b)(1)(i).

Even if Appellant could meet the timeliness exception of section 9545(b)(1)(ii) based on his discovery of the previously unknown fact that Philadelphia Homicide detectives engaged in a 'pattern and practice' of misconduct, we conclude that that fact is not the actual basis of Appellant's claim for relief. Instead, he is using this broader assertion of a 'pattern and practice' of impropriety to argue that ***Augustine engaged in misconduct in his case*** by allegedly planting a fourth FCC at the crime scene, and then influencing other detectives to coerce Taylor into claiming that the murder weapon was missing four bullets, all in an attempt to bolster Hudson's confession implicating Appellant. For the reasons that follow, we conclude that Appellant knew, or could have discovered, the information supporting this theory of impropriety by Augustine as early as 2016 and could have raised it

in his prior PCRA petition. Thus, he cannot meet the due diligence requirement of section 9545(b)(1)(ii). ***See Commonwealth v. Brown***, 111 A.3d 171, 176 (Pa. Super. 2015) ("[A]s an initial jurisdictional threshold, [s]ection 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts.").

First, on appeal from the denial of Appellant's sixth petition, he asserted that he had discovered misconduct by Augustine that is similar to that which he raises herein. Specifically, he averred that he met "the newly-discovered fact exception based on information that … Augustine … had 'played a significant role in the wrongful conviction of a Mr. Anthony Wright.'" ***Commonwealth v. Phillips***, No. 2160 EDA 2017, unpublished memorandum at *9 (Pa. Super. filed Nov. 27, 2018) (citation omitted). Appellant "claim[ed] that … Augustine fabricated evidence, falsified reports, coerced statements from witnesses in Wright's case and, therefore, the detective likely acted with the same 'malfeasance' in Appellant's case. Appellant contend[ed] that he did not discover the facts of … Augustine's misconduct in Wright's case until September 20, 2016, when 'Wright initiated a [l]awsuit against the City of Philadelphia[,] including … Augustine.'" ***Id.*** (citation omitted). This Court deemed Appellant's claim waived because he never presented it to the PCRA court, despite that he had filed an amended petition and two responses to the court's Rule 907 notice *after* he purportedly became aware of the allegations of misconduct by Augustine. ***Id.***

From the claims asserted on appeal from the denial of Appellant's sixth PCRA petition, Appellant knew in 2016 that Augustine had engaged in misconduct in Anthony Wright's case. Indeed, Appellant admits herein that the Wright case notified him that Augustine had "falsified evidence and reports to fit Wright's false confession and then provided the false information to other detectives so that they could coerce other witnesses." Appellant's Brief at 12. These are the same actions that Appellant accuses Augustine of committing herein. Appellant also knew in 2016 that: (1) there was evidence suggesting that only three shots had been fired, which contradicted Hudson's confession; (2) Appellant had been coerced and threatened into falsely confessing; and (3) Taylor had told detectives that there were four bullets missing from the murder weapon.

We fail to see why, with the totality of this information, Appellant could not have obtained an affidavit from Taylor, further investigated cases involving Augustine's and other Philadelphia detectives' misconduct, and raised his claim of Augustine's planting the fourth FCC in his sixth PCRA petition. Notably, Appellant offers no explanation in this regard. Instead, he seemingly suggests that he did not discover Augustine's misconduct in the Wright case until he read a "February 2018 … article about … Augustine's involvement in the Wright case … in the Philadelphia Daily News." *Id.* at 34. Based on the argument he raised on appeal from the denial of his sixth PCRA petition, this assertion is clearly false.

Moreover, Appellant's discovery of the **Thorpe** case and the 'pattern and practice' of misconduct by Philadelphia homicide detectives did not reveal any new information pertinent to Appellant's discovering that Augustine allegedly placed the fourth FCC at the crime scene. Indeed, Appellant admits that "[t]he **Thorpe** ruling related to [former detective] Pitts['] participation in the pattern and practice" of misconduct, not Augustine's. **Id.** at 35. Moreover, we reject Appellant's claim that, "[p]rior to **Thorpe**[,] … [he] had no reason to look for the pattern and practice[,] much less as it related to detectives *other* than Pitts. Nor did he have any basis for contacting Taylor and inquiring about the detectives' behavior towards her." **Id.** (emphasis in original). As set forth, *supra*, Appellant had sufficient information in 2016 about Augustine's misconduct in other cases, the evidence in this case, and Appellant's own allegedly coercive interrogation to trigger his contacting Taylor and further investigating Augustine's actions.

In sum, Appellant has failed to demonstrate that he could not have raised, in his sixth PCRA petition, his claim that Augustine allegedly planted the fourth FCC at the crime scene. Therefore, he has failed to demonstrate that he acted with due diligence in raising this newly-discovered evidence claim in his 2019 petition. He has also not established that the Commonwealth interfered with his ability to raise this claim and, therefore, he cannot meet the governmental-interference exception either. No relief is due.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/7/21